WARREN W. EASTER v. CHARLES R. EASTER and ELIZABETH R. EASTER, Appellants.

**Division Two, December 10, 1912.**

**RESULTING TRUST:** Partnership: Evidence.. A partner suing to establish a resulting trust in property the title to which was taken in the name of the wife of another partner, must show, so clearly, cogently and convincingly as to leave no reasonable doubt, that partnership money went into the purchase. The evidence in this case is *held* insufficient for such purpose.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

REVERSED AND REMANDED (*with directions*).

*McCune, Harding, Brown & Murphy* for appellants.

(1) Elizabeth Easter holds the property in question by virtue of a warranty deed, absolute on its face. Before plaintiff can impress a resulting trust on the property, he must establish his case by strong, clear and unequivocal evidence, falling but little short of demonstration. This he failed to do. The only direct evidence on this point was his own. It was vague and uncertain and fell far short of being intelligent, much less convincing, and was stoutly contradicted by every scrap of paper and every witness connected with the transaction. Johnson v. Quarles,

46 Mo. 432; Kennedy v. Kennedy, 57 Mo. 76; Ringo v. Richardson, 53 Mo. 385; Kinney v. Murray, 170 Mo. 701; Garrett v. Garrett, 171 Mo. 155; Burdett v. May, 100 Mo. 13; Philpott v. Penn, 91 Mo. 38; Coleman v. Parran, 43 W. Va. 754; Bibbs v. Hunter, 79 Ala. 358; Currence v. Word, 43 W. Va. 367.   (2) Failing to prove his case by direct evidence, counsel attempted to do so by the alleged admissions of defendants. There was no admission that any of plaintiff's money or the copartnership money went into this property, but had there been, such admissions would not amount to direct proof.   It is sometimes doubted whether admissions ought to be received when introduced for the purpose of divesting a title created by deed, but they are never admitted as direct proof.   Its only office is to corroborate.   There being no direct evidence and nothing to corroborate, it was error to admit it.   Kinney v. Murray, 170 Mo. 701; Johnson v. Quarles, 46 Mo. 427; Coronet v. Bertlemann, 61 Mo. 127; Ringo v. Richardson, 53 Mo. 385; Fanning v. Doan, 139 Mo. 392; Berry v. Hartzell, 91 Mo. 137; Underwood v. Underwood, 48 Mo. 527; Garrett v. Garrett, 171 Mo. 164; Davis v. Greene, 102 Mo. 170; Reed v. Morgan, 100 Mo. App. 713; 1 Greenleaf on Evidence (16 Ed.), Sec. 200.   (3) Plaintiff did not pretend to know how much of his money, if any, went into the purchase price of the real estate.   A person in whose favor a resulting trust is sought to be enforced, must show specifically by clear, convincing and unequivocal evidence, what amount of his money went into the purchase price of the property.   If proof of amount is uncertain, the resulting trust will fail.   Coleman v. Parron, 43 W. Va. 737; Olcott v. Bynum, 17 Wall. 44; In re Wood, 5 Fed. 443; Baker v. Vining, 30 Me. 121; Bailey v. Hemingway, 147 Mass. 326; Smith v. Burnham, 3 Summ. (U. S.) 466; Ducie v. Ford, 138 U. S. 591; Bibbs v. Hunter, 79 Ala. 351; Woodside v. Hewell, 109 Cal. 487; Wheeler v. Kirtland, 23 N. J. Eq. 13; Garrett

v. Garrett, 171 Mo. 155; Reynolds v. Morris, 19 N. J.
Eq. 549; Sumner v. Pelton, 30 Ore. 268.

*Ed. E. Aleshire* and *S. S. Gundlach* for respond-
ent.

We agree with appellant's counsel that a result-
ing trust should be established by clear and cogent
proof, but no stronger proof can be offered in a case
of this character than the solemn admissions by the
parties holding the trust or responsible for it and
such trust may be as of a proportionate part as found
by the chancellor in this case. Crawford v. Jones, 163
Mo. 577. There is practically no difference between
counsel as to the law of this case, but we differ only as
to the probative effect of the evidence. The chancel-
lor observed all of the witnesses and heard all of the
evidence and we think properly applied the same.
Owensby v. Chewing, 171 Mo. 226; Prewitt v. Prewitt,
188 Mo. 675; McMurray v. McMurray, 180 Mo. 526.

BLAIR, C.—Warren W. Easter, the plaintiff, and
defendant Charles R. Easter are brothers and defend-
ant Elizabeth R. Easter is the latter's wife. For
about ten years the brothers were partners in the res-
taurant business and this suit was begun by plaintiff
to recover an interest in a certain lot in Kansas City
the title to which was taken May 11, 1901, in the name
of defendant Elizabeth but which plaintiff contends
was bought with partnership funds and for the part-
nership. From a decree vesting title as to an undi-
vided one-fifth of the property in the plaintiff and de-
fendant Charles R., as partners, both defendants have
appealed.

Counsel do not differ materially as to the law of
the case, the real controversy being as to the suffi-
ciency of the evidence to support the finding that
partnership funds were employed in the purchase.

Since the principal question to be determined is purely one of fact, it becomes necessary to review the evidence in the case.

The partnership between the brothers began in 1892 and they conducted the business until some time in 1895 when it was sold on deferred payments which the purchaser soon found himself unable to meet and the partnership again resumed the business and prosecuted it continuously until in 1902. The evidence does not show the profits of the business to have been very large prior to the sale mentioned though there is evidence the firm made some money. In 1894 Charles R. Easter married the defendant Elizabeth R. Easter, who appears to have had some knowledge of the restaurant business and to have been both capable and economical. Some time after resuming business in 1895 the two brothers began to save a little money and by June, 1899, had accumulated $105 each by means of payments separately made on building and loan stock. In June, 1899, the two purchased the interest of another brother in property at Lexington, paying fifty dollars each and executing a note for seventy-five dollars for a balance. At this time plaintiff withdrew all his money from the building and loan, and Charles R. borrowed fifty dollars from the association, withdrawing the balance two months later. The business was prosperous thenceforward and May 11, 1901, the property here involved was purchased, the title being taken in the name of Elizabeth R. Easter and the purchase price of $7000 being paid as follows: $500 in cash; $2000 in property conveyed to Elizabeth R. Easter by her mother for use in effecting the purchase; and the balance was secured by a first and second deed of trust for $3500 and $1000 respectively. The owner of the property had no dealings with plaintiff, the whole of the business, including his contract to erect a two-story building on the lot he sold, being transacted by Elizabeth R. and Charles R. Easter

An error in the estimate of the width of the lot resulted in a credit of $300 on the note secured by the second deed of trust and the balance of $700 was paid, as due, in monthly installments of seventy-five dollars, the greater portion of the amount being paid between May 11, 1901, and May 15, 1902. These payments were made by Mrs. Easter usually, none of them being made personally by plaintiff.

From the beginning plaintiff was addicted to the use of intoxicants and the evidence is clear that he spent some time and considerable money in indulging his appetite for drink. Apparently disinterested witnesses testified that for a long time he was constantly under the influence of liquor and he admits the habit but denies expending any considerable amount of money in indulging it. At any rate, in 1899 his condition had become such that he thought it proper to take what is commonly called the "Keeley Cure" and did so. Thereafter he began drinking again and his health seems subsequently to have been very poor.

In 1902 plaintiff, who is usually called "Wirth" by the witnesses, executed to defendant Charles R. Easter a bill of sale of the stock and fixtures "together with the good will of such restaurant business heretofore conducted at 420 West Ninth street, Kansas City, Mo., under the name of 'Easter Bros.' It being the intention of said Wirth W. Easter to convey to said Charles R. Easter all his interest in and to the above described property and business." This instrument was dated July 30, 1902, and the recited consideration was $500. The consideration was paid, the evidence shows, in semi-monthly installments of fifteen dollars.

Plaintiff testified he and his brother had no settlements and made no division of profits at all during the time the partnership existed but that Charles R. simply kept all the firm's money after the expenses were paid; that until 1899 the profits were small and were absorbed by rent paid which amounted to seventy

dollars per month. He was unable to state what profits the firm was making at the time the removal to the new building (1901) occurred, the nearest approach being: "Well, we were doing a very good business, a very good business, and so far as the volume goes, I do not know, it might have been over one hundred dollars a month, probably, clean cash." He further testified the firm had six or seven hundred dollars on hand in May, 1901; that he and Charles R. Easter agreed to purchase the lot at 420 West Ninth street and have the title put in the name of Charles's wife. He testified positively he personally participated in the negotiations for the lot but it clearly appeared he did not do so. He was unable to tell by or to whom the money was paid, from what source it came, or what the amount of it was, and finally admitted he didn't know that it was paid at all. He said that both he and his brother had access to the money drawer, that each took money as he wished, leaving a ticket in the money drawer, and that a book account of what each received was kept by the firm. The book was not produced nor was any effort made to secure its production, so far as the record shows. There is so much of contradiction, uncertainty and clear mistake in plaintiff's testimony that it may be properly characterized as quite incoherent.

Lawrence Easter, another brother, testified that defendant Charles told him at one time in 1895 or 1896 the firm had building and loan stock to the amount of "possibly four to six hundred dollars, something like that—five hundred, I don't remember the amount," accumulated in "a few years, a year and a half;" and that after 1902 plaintiff wanted to go back to the restaurant but Charles R. would not permit it, stating that Wirth "was breaking down in health and had plenty and didn't have to work." Witness declared he frequently asked Charles R. to take Wirth back with him. He further stated that in 1901 he had

heard Charles R. say the firm was making $300 to $400 per month but acknowledged Charles R. offered to sell the business to him for $700. James Drummond testified that in 1906 Charles R. Easter said to him that "Weezie and Jessie was continually after him to let Wirth go back in the business; now Wirth don't have to work; he has plenty to take care of him, and I intend to see he is taken care of as long as he lives." Mrs. Drummond and Mrs. Whitsett (sisters of the Easters) testified Mrs. Easter told them in February, 1903, that if anything happened to her husband, Wirth "would get his part just the same." Walter Whitsett, a brother-in-law, testified that Charles R. Easter, speaking of the proposed purchase of the lot in question, told him he and Wirth were talking about buying it but he, Easter, "had a hard time to get Wirth's consent to it; he was scared to risk his money in it and thought they might lose everything they had and he discouraged him every time he approached him about the matter;" that Charles R. also told him "they had talked it over and concluded to have the deed put in his wife's name for their own convenience." Witness also said Charles R. had told him he and Wirth were to put $2600 to $3000 into the purchase of the lot at the first.

There was also evidence from these and other witnesses as to other alleged admissions but they were inferences of the witnesses, as appeared in each instance, and lacking in probative force.

Charles R. Easter and his wife both testified that the $500 cash payment made on the lot was composed of $250 of Mrs. Easter's money, paid her by her mother for the board of Cora La Rose, Mrs. Easter's younger sister, and $250 which belonged to Charles R. Easter personally. They denied the admissions attributed to them and detailed the manner in which they purchased the lot in question and in respect to this were corroborated in the main by the former owner.

The subsequent payments were made, they said, from the rent from the building, about $125 per month, and Charles R.'s share of the profits from the restaurant business. As to Wirth Easter's dissolute habits they were corroborated by Cora La Rose, by a bartender and another disinterested witness. They offered in evidence the cash book of a building and loan association showing that Wirth and Charles R. Easter had $105 each with the association in 1899 and that the money was withdrawn by each of them in the summer of that year. They produced a list of payments made to Wirth Easter, subsequent to the date of the bill of sale in evidence, totaling seven hundred and some dollars. It appeared from their evidence and that of plaintiff that the firm of Easter Bros. paid no rent to Elizabeth or Charles R. Easter. Defendants testified this was the result of a promise to plaintiff that they would buy the lot and put up the building and charge the firm no rent if he, plaintiff, "would brace up and quit drinking" and attend better to business. The rental value of the room occupied by the restaurant was about $25 per month  According to the evidence for defendants no books, as between the partners, were kept, the profits being divided when there were any. For some time after the dissolution of the partnership and after the payment of the $500 due plaintiff according to the terms of the bill of sale, Charles R. Easter continued to furnish some money to plaintiff directly or pay it to his brothers or sisters for caring for him but in 1906 refused to provide for him further. Two of the sisters, according to their testimony, attempted to get him to take plaintiff back but he refused. It appears Charles R. also contributed to the support of another brother.

The question in this case is whether the cash payment of $500 made on the lot purchased in 1901 was partnership money. In order to establish a resulting

trust in this case it must be shown that partnership money went into the purchase of the lot.

On plaintiff rests the burden to make this appear so clearly, cogently and convincingly as to leave no reasonable doubt on that head. Counsel do not differ as to this.

Has plaintiff met the requirements of the rule? We think not. That the partnership had funds at the time is not sufficient. They must be shown to have gone into the property. To meet the denial of defendants and the fact that plaintiff personally took no part of any kind in negotiations and had no interest in the property turned in on the purchase of the lot, resort is had to testimony as to statements made by Charles R. Easter in contemplation of the purchase and admissions said to have been made by him and Elizabeth R. subsequent thereto. As to the former they clearly appeared, in several instances, to have been unconsciously amplified by inferences drawn by the witnesses from the mere fact that a partnership in the restaurant business existed between the brothers. In other instances the alleged declarations might as clearly indicate an intent of Charles R. Easter and his wife to purchase as an intent of the partners to do so.

So far as the admissions coming after the purchase are concerned, what has just been said applies to some of them and others have no direct reference to the property in question. Mrs. Elizabeth Easter's statement in February, 1903, is explicable as a reference to the unpaid balance due plaintiff under the bill of sale. Mr. Whitsett's testimony shows that plaintiff was objecting to the purchase, was afraid to participate in it and was opposing it. It also appears from his testimony that the plan at that time, the one plaintiff was considering, was that Easter Bros. were to put $2600 to $3000 into the property in order to get the lot and get a building erected thereon. The actual

purchase made was not in accordance with this plan. It is beyond dispute that $2000 of the $2500 payment made at the time of purchasing the lot consisted of property belonging to Elizabeth Easter's mother in which plaintiff had no sort of interest and we think it satisfactorily proved that $240 of the remaining $500 was money of Mrs. Easter derived from payments made her by her mother in consideration of her caring for her sister, Cora La Rose. This leaves but $260 in which plaintiff could have an interest. Clearly, then, the plan under consideration at the time Charles R. Easter talked with Whitsett, taking Whitsett's testimony as true, was not the one adopted in the purchase.

Further, plaintiff's unexplained conduct in signing the bill of sale (and we agree with the trial court he did execute it) without giving any attention to the interest he now claims in the realty and the fact he seems never to have concerned himself about it until the property had greatly increased in value, are not in full accord with his position in this case. He apparently took no part at any time in the management of the property or the collection of the rents—gave it no attention whatever, so far as this record shows. Plaintiff's own testimony is valueless. It may be possible his incoherency, lack of memory and self-contradiction are due to the effects of his unfortunate habits, but whatever their cause they cannot themselves constitute evidence in his favor. The record does not indicate any wilful misstatement of facts by any witness, but rather that those for plaintiff have mingled inferences with unguarded and ambiguous statements of defendants and have permitted themselves to assume from the partnership in the restaurant business a partnership in everything.

In view of these facts and the rule to which we have already adverted, this judgment ought to be and is reversed and the cause remanded with directions to

the trial court to enter judgment for defendants. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.